IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LATONGA DIXON,

    PLAINTIFF,

VS.

VICTORIA'S SECRET STORES, LLC,

    DEFENDANT.

CV NO.: 2:18-cv-436-SRW

JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. 1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e *et seq*. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq*. (Title VII). The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for injunctive and other relief against sexual harassment and retaliation.

2. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

## II. PARTIES

3. Plaintiff, Latonga Dixon (hereinafter "Plaintiff"), is a resident of Montgomery, Montgomery County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District of Alabama, Northern Division.

4. Defendant, Victoria's Secret Stores, LLC (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 42 U.S.C. § 2000e, *et seq*. Defendant employed at least fifteen (15) persons during the current or preceding calendar year. Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

6. Plaintiff is a woman of African ancestry.

7. Defendant hired Plaintiff on March 13, 2017.

8. Defendant hired Plaintiff for the position of Store Manager.

9. Defendant employed Nechele Vickers.

10. Nechele Vickers is a woman of European ancestry.

11. Defendant employed Nechele Vickers in the position of Merchandising Manager.

12. On or about October 19, 2017, Plaintiff reported to Defendant that Vickers had harassed her.

13. Vickers made inappropriate and vulgar comments to Plaintiff and also threw things at her.

14. Defendant employed Christina Bryant.

15. Defendant employed Christina Bryant in the position of District Manager.

16. Plaintiff reported Vickers' continued inappropriate conduct to District Manager, Christina Bryant.

17. Plaintiff and Bryant met to discuss Vickers' conduct.

18. Bryant told Plaintiff that she could not "pick on" Vickers because she was the only person of European ancestry that worked in the store and that the store needed Vickers there for diversity purposes.

19. Plaintiff responded to Bryant by telling her that she was not picking on Vickers.

20. Plaintiff told Bryant that the rules needed to be applied fairly regardless of race, and that Vickers should be required to follow the rules.

21. Bryant neither investigated Vickers' behavior nor disciplined her.

22. A few weeks after Plaintiff reported Vickers' misconduct and was told that Vickers would not be disciplined, Bryant issued Plaintiff a write up.

23. Prior to Plaintiff's complaint about Vickers, she had not received any verbal or written disciplinary action.

24. Prior to Plaintiff's complaint about Vickers, she had consistently been one of the highest performing managers in her district.

25. Defendant's district's sales numbers show that Plaintiff was one of the top producing managers in the district.

26. A few weeks after reporting Vickers' behavior, Bryant wrote Plaintiff up for a signage problem that occurred during a store visit.

27. Bryant immediately placed Plaintiff on probation instead of following Defendant's usual procedure of engaging in progressive discipline.

28. Other managers, who have not reported sexually harassing conduct, were not placed on probation for their first signage problem.

29. Other managers, who are not of African ancestry, are allowed to discipline employees who are of European ancestry.

30. Plaintiff continued to report Vickers' sexually harassing behavior to Bryant, to no avail.

31. Vickers' conduct included humping Plaintiff's body and inappropriate verbal comments in which she came up behind Plaintiff, smacked her buttocks, and, said, "Wow, your pussy is really fat."

32. On December 15, 2017, Plaintiff called the employee hotline to report Vickers' misconduct to Defendant's Human Resources Department.

33. On or about December 22, 2017, Defendant initiated an investigation at the store.

34. During the investigation, Plaintiff told District Manager, Christina Bryant, that she believed her response to her complaints about Vickers was racially discriminatory.

35. On December 26, 2017, Plaintiff filed a charge of Discrimination with the EEOC (charge #: 420-2018-00774).

36. During Defendant's investigation, Plaintiff's claims of sexually inappropriate conduct and comments on the part of Vickers were substantiated.

37. On January 9, 2018, Defendant terminated Plaintiff's employment citing Bryant's previous retaliatory write up.

### IV. COUNT ONE– SEXUAL HARASSMENT – Termination

38. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 37 above.

39. Defendant hired Plaintiff on March 13, 2017 to work in the position of Store Manager.

40. Defendant employed Nechele Vickers in the position of Merchandising Manager.

41. On or about October 19, 2017, Plaintiff reported to Defendant that Vickers had sexually harassed her.

42. Vickers made inappropriate and vulgar comments to Plaintiff and also threw things at her.

43. Defendant employed Christina Bryant in the position of District Manager.

44. Plaintiff reported Vickers' continued inappropriate conduct to Bryant.

45. Plaintiff and Bryant met to discuss Vickers' conduct.

46. Bryant told Plaintiff that she could not "pick on" Vickers because she was the only person of European ancestry that worked in the store and that the store needed Vickers there for diversity purposes.

47. Plaintiff responded to Bryant by telling her that she was not picking on Vickers.

48. Bryant neither investigated Vickers' behavior nor disciplined her.

49. A few weeks after reporting Vickers' behavior, Bryant wrote Plaintiff up for a signage problem that occurred during a store visit.

50. Bryant immediately placed Plaintiff on probation instead of following Defendant's usual procedure of engaging in progressive discipline.

51. Other managers, who have not reported sexually harassing conduct, were not placed on probation for their first signage problem.

52. Plaintiff continued to report Vickers' sexually harassing behavior to Bryant, to no avail.

53. Vickers' conduct included humping Plaintiff's body and inappropriate verbal comments in which she came up behind Plaintiff, smacked her buttocks and said, "Wow, your pussy is really fat."

54. On December 15, 2017, Plaintiff called the employee hotline to report Vickers' misconduct to Defendant's Human Resources Department.

55. On or about December 22, 2017, Defendant initiated an investigation at the store.

56. During Defendant's investigation, Plaintiff's claims of sexually inappropriate conduct and comments on the part of Vickers were substantiated.

57. In violation of Title VII, Defendant terminated Plaintiff's employment for signage issues but did not terminate the employment of employees that did not report sexual harassment and had signage issues.

58. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V. COUNT TWO – RETALIATION – Title VII – Termination

59. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 58 above.

60. Defendant hired Plaintiff on March 13, 2017.

61. Defendant hired Plaintiff for the position of Store Manager.

62. Defendant employed Nechele Vickers.

63. Defendant employed Nechele Vickers in the position of Merchandising Manager.

64. On or about October 19, 2017, Plaintiff reported to Defendant that Vickers had harassed her.

65. Vickers made inappropriate and vulgar comments to Plaintiff and also threw things at her.

66. Defendant employed Christina Bryant.

67. Defendant employed Christina Bryant in the position of District Manager.

68. Plaintiff reported Vickers' continued inappropriate conduct to Christina Bryant.

69. Plaintiff and Bryant met to discuss Vickers' conduct.

70. Bryant told Plaintiff that she could not "pick on" Vickers because she was the only person of European ancestry that worked in the store and that the store needed Vickers there for diversity purposes.

71. Plaintiff responded to Bryant by telling her that she was not picking on Vickers.

72. Plaintiff told Bryant that the rules needed to be applied fairly regardless of race, and that Vickers should be required to follow the rules.

73. Bryant neither investigated Vickers' sexually harassing behavior nor disciplined her.

74. A few weeks after Plaintiff reported Vickers' sexually harassing misconduct and was told that she would not be disciplined, Bryant issued Plaintiff a write up.

75. Prior to Plaintiff's complaint about Vickers, she had not received any verbal or written disciplinary action.

76. Prior to Plaintiff's complaint about Vickers, she had consistently been one of the highest performing managers her district.

77. Defendant's district's sales numbers show that Plaintiff was one of the top producing managers in the district.

78. A few weeks after reporting Vickers' behavior, Bryant wrote Plaintiff up for a signage problem that occurred during a store visit.

79. Bryant immediately placed Plaintiff on probation instead of following Defendant's usual procedure of engaging in progressive discipline.

80. Other managers, who have not reported sexually harassing conduct were not placed on probation for their first signage problem.

81. Plaintiff continued to report Vickers' sexually harassing behavior to Bryant, to no avail.

82. Vickers' conduct included humping Plaintiff's body and inappropriate verbal comments in which she came up behind Plaintiff, smacked her buttocks and said, "Wow, your pussy is really fat."

83. On December 15, 2017, Plaintiff called the employee hotline to report Vickers' misconduct to Defendant's Human Resources Department.

84. On or about December 22, 2017, Defendant initiated an investigation at the store.

85. During the investigation, Plaintiff told Christina Bryant, that she believed her response to her complaints about Vickers were racially discriminatory.

86. On December 26, 2017, Plaintiff filed a charge of Discrimination with the EEOC (charge #: 420-2018-00774).

87. During Defendant's investigation, Plaintiff's claims of sexually inappropriate conduct and comments on the part of Vickers were substantiated.

88. On January 9, 2018, Defendant terminated Plaintiff's employment citing Bryant's previous retaliatory write up.

89. Defendant discriminated against Plaintiff by terminating her because of her report of sexual harassment.

90. Defendant retaliated against Plaintiff by terminating her because of her report of sexual harassment.

91. As a result of Defendant's violation of the anti-retaliatory protected activity encompassed by Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

92. Because of Plaintiff's previous complaints of sexual harassment committed in violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Title VII of the Civil Rights Act of 1964;

B.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

C.    Award her back pay, together with employment benefits, front pay, compensatory damages, punitive damages; special damages; nominal damages;

D.    Attorneys' fees and costs;

E.    Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 626 that the actions of Defendant violated the law; and,

F.    Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Kira Fonteneau

_____
Allen D. Arnold

**OF COUNSEL:**

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
T: (205) 252-1550 F: (205) 502-4476

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
Victoria's Secret Stores, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104